IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-CV-23645-WMH

CARLES CONSTRUCTION, INC.,
a Florida corporation, REINALDO
CARLES, and MARIA C. CARLES,

       Plaintiffs,

v.

TRAVELERS CASUALTY &
SURETY COMPANY OF AMERICA,
a foreign corporation,

       Defendant.

_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO
### ALL COUNTS OF PLAINTIFFS' SECOND AMENDED COMPLAINT

      Defendant, Travelers Casualty & Surety Company of America ("Travelers"), by and through its undersigned counsel, hereby files its Motion for Summary Judgment as to all Counts Plaintiffs', Carles Construction, Inc., a Florida corporation, Reinaldo Carles, and Maria Carles (collectively "Plaintiffs"), Second Amended Complaint, and in support thereof states as follows:

### STATEMENT OF MATERIAL FACTS

      Contemporaneously with filing this Motion, Travelers filed its Statement of Material Facts ("SMF") in Support of Motion for Summary Judgment pursuant to Local Rule 56.1. [Dkt. 111]. The SMF includes and cites Travelers' evidence in support of this Motion.  Travelers incorporates into this Motion the SMF, all of its attached evidence and exhibits, and all other evidence referred to therein.

## INTRODUCTION

This case was filed in 2009, and has progressed slowly from its inception based upon a number of factors, including the withdrawal of Plaintiffs' first counsel, the disqualification of Plaintiffs' second counsel, and the resolution of Travelers' motion to dismiss Plaintiffs' bad faith and Florida Deceptive and Unfair Trade Practices claims.  To understand the landscape of the current matter, it is necessary to present a brief history.

Plaintiff, Carles Construction, Inc., was a subcontractor to Facchina-McGaughan, LLC on two condominium projects in Miami-Dade County, the Brickell on the River II, and the Quantum on the Bay (hereinafter "Projects").  Travelers issued performance bonds, naming Carles Construction as principal and Facchina-McGaughan as obligee on the Projects.  Disputes arose between Facchina-McGaughan and Carles Construction on the Projects that resulted in two separate lawsuits ("Underlying Litigation").  As part of the underlying litigation, Facchina-McGaughan asserted claims against Carles Construction and Travelers in excess of $15 million, and Carles asserted claims against Facchina-McGaughan of approximately $4 million.

Ultimately, when Carles Construction defaulted under the terms of the General Agreement of Indemnity ("GAI") by failing or refusing to post collateral with Travelers, the Underlying Litigation was settled by payment of $3.55 million to Facchina-McGaughan and dismissal of Carles Construction's claims.  Plaintiffs' initiated this action seeking damages under the performance bonds, based upon the aforementioned settlement.

Based upon the discovery, pleadings, other evidence, as conjunction with the law cited herein, Travelers asserts that there are no genuine issues of fact remaining, and it is entitled to judgment as a matter of law on all Counts of the Second Amended Complaint.  Specifically, Travelers is entitled to judgment as a matter of law on Plaintiffs claim for declaratory relief in

Count III of the Second Amended Complaint because it is redundant to their claim for breach of contract and their affirmative defenses, fails to state a cause of action, and seeks relief that is impermissible in a declaratory action.  Travelers is also entitled to judgment as a matter of law on Plaintiffs' claim for breach of contract in Count I of the Second Amended Complaint, because Plaintiffs' have no standing as a matter of law to assert a claim for breach of contract under the performance bonds, and the claim is expressly precluded by the "no right of action" provision in the performance bonds.  Finally, Travelers is entitled to judgment as a matter of law on Count II of Plaintiffs' Second Amended Complaint because there is no evidence anywhere in the record supporting a claim for civil conspiracy.

Accordingly, Travelers respectfully requests that this Court enter judgment in its favor on all Counts of Plaintiffs' Second Amended Complaint for the reasons stated herein.

<u>**MEMORANDUM OF LAW IN SUPPORT OF TRAVELERS' MOTION**</u>

**A.  The Applicable Summary Judgment Standards.**

Summary judgment is appropriate if there are no genuine issues of material fact.  *See Ward v. County of Orange*, 217 F.3d 1350, 1353 (11th Cir. 2000); Fed. R. Civ. P. 56(c). The movant has the initial burden of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits if any,'" that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Upon this showing, the burden shifts to the non-moving party. The opponent "must do more than simply show that there is a metaphysical doubt as to the material facts," it must demonstrate a "genuine issue for trial."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). After reviewing the evidence produced by the non-movant, the court

must determine whether "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587.  If so, no genuine issue of material fact exists, and summary judgment is warranted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Travelers Is Entitled To Judgment As A Matter of Law On Count III Of The Second Amended Complaint Because Plaintiffs Cannot State A Cause of Action

Count III of Plaintiffs Second Amended Complaint seeks declaratory relief purportedly because "the parties need judicial intervention in order to determine the parties' obligations under the bond contracts, including the indemnity agreement." [Dkt. 108, ¶ 32].  As relief there under, Plaintiffs ask this Court to declare: "(1) that the Plaintiffs the Plaintiffs are not obligated to indemnify Travelers for its settlement with Facchina; (2) that this Court declare that Travelers has acted in bad faith and with an irreconcilable conflict of interest[1]; (3) that this Court declare that Travelers is in default of the bond agreements and of the indemnity agreement; and (4) that this Court declare that Travelers' account to Carles Construction for the valid claims that Carles Construction had against Facchina." [Dkt. 108, pp 6 - 7].

If a Plaintiff merely seeks legal advice from the court, a declaratory judgment would be improper. *Trianon Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 741 F. Supp. 2d 1327, 1330 (S.D. Fla. 2010).  Florida law requires an individual seeking declaratory relief to show: (1) there is a bona fide, actual, present practical need for the declaration; (2) that the declaration deals with a present, ascertained or ascertainable state of facts or present controversy; (3) that some right or privilege of the complaining party is dependent upon the facts or the law applicable to the facts; (4) there is some person who has an actual, present adverse interest in the subject matter; (5) all

---

[1] This requested relief is identical to Count IV of Plaintiffs' Corrected Amended Complaint, alleging bad faith [Dkt. 66].  This count was correctly dismissed by the court [Dkt. 82] and it is not appropriate to "relitigate" this issue by way of a declaratory relief count.

adverse parties are presently before the court; and (6) the relief sought is not merely seeking an advisory opinion.  *Id.* at 1330-31 *citing Santa Rosa County v. Administration Commission, Division of Administrative Hearings*, 661 So. 2d 1190, 1192–93 (Fla.1995).  *See also May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952).

Aside from the fact that the Plaintiffs have not pled a single one of the required elements, and although Plaintiffs improperly pled a cause of action that is titled "Declaratory Relief," in actuality this claim requests a judicial determination that Travelers "is in default of the bond agreements and of the indemnity agreement" and as a result "that this Court declare Travelers account to Plaintiff Carles Construction for the valid claims that Carles Construction had against Facchina."  In other words, Plaintiffs' are seeking a declaration that Travelers is in breach and liable for damages, i.e. breach of contract.  However, as one Florida court provided,

> One who seeks a declaratory judgment is generally not seeking to enforce a claim against the defendant; rather, ***he is seeking a judicial declaration as to the existence and effect of a relationship between himself and the defendan****t. The effect of the judgment, therefore, **unlike a judgment for the payment of money or damages**, is not to merge the cause of action in the judgment but to make *res judicata* only the matters actually declared by the judgment, thus precluding the parties to the litigation or their privies from re-litigating those matters.

*North Shore Realty Corp. v. Gallaher*, 99 So. 2d 255, 256-257 (Fla. 3d DCA 1957) (Emphasis added).

Accordingly, because Plaintiffs' allegations are insufficient to state a cause of action for declaratory relief, and ultimately seek relief that is outside the purview of declaring the existence and effect of a relationship between Plaintiffs' and Travelers, summary judgment in favor of Travelers is appropriate on Count III of Plaintiffs' Second Amended Complaint as a matter of law.

**C. Travelers Is Entitled To Judgment As A Matter of Law On Count III Of The Second Amended Complaint Because It Is Redundant To Count I And Plaintiffs' Eighth Affirmative Defense**

In addition to the arguments above, Federal Courts also routinely discourage parties from filing declaratory relief redundant to contemporaneously filed claims. *Gratke v. Andersen Windows, Inc.*, No. 10-CV-963 (PJS/LIB), 2010 WL 5439763 (D. Minn. Dec. 8, 2010); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 152 F.R.D. 580, 582 (D. Minn. 1993); *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975); *Resolution Trust Corp. v. Ryan*, 801 F. Supp. 1545, 1556 (S.D. Miss. 1992). The court's disfavor of redundant declaratory relief applies to redundancies arising out of both claims and affirmative defenses currently before the court. *See, e.g., DZ Bank*, 2010 WL 4739521 (dismissing a party's counterclaim for declaratory judgment without leave to amend because the other party's complaint would determine the same issues); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369 (M.D. Fla. July 15, 2008) (same); *Sembler Family P'ship #41, Ltd. v. Brinker Fla., Inc.*, No. 8:08-cv-1212-T-24 MAP, 2008 WL 5341175 (M.D. Fla. Dec. 19, 2008) (dismissing a party's counterclaim for declaratory judgment without leave to amend as "redundant and unnecessary" because the other party's complaint would determine the same issues); *Gratke*, 2010 WL 5439763 (dismissing a party's counterclaim for declaratory judgment as redundant, where the counterclaim merely repackaged its affirmative defenses to the other party's complaint). As aptly stated by the Seventh Circuit, "[w]hat is really an answer or defense to a suit does not become an independent piece of litigation because of its label." *Tennenco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) (citing Fed. R. Civ. P. 8(c)).

By way of analogy, in *Daily v. Federal Insurance Co.*, No. C 04-3791 PJH, 2005 WL 14734 (N.D. Cal. Jan. 3, 2005), a policyholder filed an action against its primary and excess

insurers seeking a declaration that the insurers were obligated to defend and indemnify him in connection with an underlying suit. The primary carrier filed counterclaims for declaratory relief, offset to avoid unjust enrichment, offset for money previously paid to the insured, and reimbursement of monies already advanced to the insured. *Id*. at *2. The Policyholder moved to dismiss the insurer's offset counterclaims and strike the counterclaims seeking declaratory relief as redundant of the issues already pled by the insured. The district court granted both motions, with a rationale well-suited to this case:

> The counterclaims for declaratory relief asserted by Federal and Royal all seek the same result as Daily's cause of action for declaratory relief, and to that extent, are redundant. Federal and Royal's counterclaims for declaratory relief essentially seek a determination that each of those entities is not obligated to provide Daily with insurance coverage for the amounts he is and shall be legally obligated to pay in connection with the claim in the [underlying] suit. The general allegations supporting the counterclaims advance various reasons that Federal or Royal is not obligated to pay, as does each of the individual declaratory relief counterclaims. Both Daily and the insurers seek a judicial determination of whether the insurers are required to pay Daily…Resolution of Daily's claim, along with the affirmative defenses asserted by Federal and Royal, will resolve all questions raised by the insurer's counterclaims.

> *Id*. at *6.

When deciding whether to dismiss a claim as redundant, courts consider whether the declaratory judgment serves a useful purpose independent of the litigation already presenting the same issues. *Gratke*, 2010 WL 5439763, at *3. "This analysis requires consideration of whether resolution of [a party's] claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the [claim]." *Id.*  Here, Plaintiffs' claim for declaratory relief is nothing more than a regurgitation of their claim for breach of contract, and their Eighth Affirmative Defense to Travelers' claim for indemnity, repackaged as a separate action for declaratory judgment.  Specifically, the following chart depicts the comparison between Plaintiffs' declaratory action, breach of contract action, and affirmative defense:

| Declaratory Action (Count III) | Breach of Contract (Count I) | Eight Affirmative Defense |
|---|---|---|
| Not obligated to indemnify Travelers for settlement | | Not obligated to indemnify Travelers, i.e. failure to settle in good faith. |
| Travelers acted in bad faith by settling with Facchina-McGaughan | Travelers acted in bad faith by settling with Facchina-McGaughan | Travelers acted in bad faith by settling with Facchina-McGaughan |
| Travelers in default of the bond agreements | Travelers breached its surety agreement | Travelers breached the contracts. |
| Damages for lost claim against Facchina-McGaughan | Damages for lost claim against Facchina-McGaughan | |

Similar to the situation in *Daily*, resolution of the Plaintiffs' breach of contract claim, along with its Eighth Affirmative Defense, will resolve all issues raised by the declaratory action contained in Count III of the Second Amended Complaint. Plaintiffs' attempt to take two or three bites at the apple, by pleading the same facts and relief, is redundant, improper, and a waste of judicial resources. If Plaintiffs are seeking damages, they must do so under their breach of contract count. If they are seeking to be absolved from liability under Travelers' claim for indemnity, they must carry their burden of proof on their Eighth Affirmative Defense. However, the parties and the court are not required to mire through multiple redundant claims and defenses to achieve the same end result. Accordingly, summary judgment in favor of Travelers is appropriate on Count I of Plaintiffs' Second Amended Complaint as a matter of law.

**D. Travelers is Entitled To Judgment As A Matter of Law On Count I Of The Second Amended Complaint Because Plaintiffs Have No Standing To Assert A Claim Against Travelers As The Principal On The Performance Bonds**

In total Count I of Plaintiffs' Second Amended Complaint contains a single substantive allegation which states:

8

> Travelers breached its surety agreement with Carles Construction and acted in bad faith by settling Carles Construction's claims against Travelers, notwithstanding the validity of those claims, and Travelers' own acknowledgment that Carles Construction's claims were valid and exceeded any claims that Facchina may have against Carles Construction. [Dkt. 108, ¶ 21]

As cited in Travelers' Statement of Undisputed Facts, Plaintiffs' undisputed testimony confirms that Plaintiffs' claim for breach of contract is asserted under the performance bonds issued by Travelers to Plaintiff, Carles Construction, as principal. [Dkt. 111, ¶¶ 9, 13]. Specifically, Mr. Reinaldo Carles, testifying both as corporate representative of Carles Construction, and individually, testified as follows:

> Q:   It says Travelers has breached its surety agreement with Carles Construction; you see that?
>
> A:   Yes.
>
> Q:   What is the surety agreement?
>
> A:   The paperwork I signed.
>
> Q:   What paperwork did you sign?
>
> A:   The actual bond.
>
> Q:   So that in your mind is the performance bond itself?
>
> A:   Correct.
>
> [Carles Depo., pp 28, ln 16 – 25]

In *Shannon R. Ginn Construction Company v. Reliance Ins. Co*., 51 F. Supp. D 1347, 1352 (S.D. Fla. 1999), this court was faced with the question of respective duties under the tripartite suretyship relationship. In *Ginn*, the court was addressing a claim of bad faith by a principal, against its surety, under a performance bond.  In reaching its decision to dismiss the principal's claims, the court held:

The question, then, is to whom does a surety owe a duty. The Colorado Supreme Court addressed this issue in *Transamerica Premier Ins. Co. v. Brighton School District,* 940 P.2d 348 (Colo.1997). It compared the insurer/insured relationship to the surety/obligee relationship and concluded they were "nearly identical," stating "[w]hen an obligee requests that a principal obtain a commercial surety bond to guarantee the principal's performance, the obligee is essentially insuring itself from the potentially catastrophic losses that would result in the event the principal defaults on its original obligation." *Id.* at 352. Because the obligee looks to the surety for protection from calamity, the surety owes a duty of good faith to the obligee. Notably, in a suretyship, ***the principal does not look to the surety for protection. Quite the opposite is true; the surety looks to the principal for indemnification***. *See Airlines Reporting Co.,* 37 Cal.Rptr.2d at 567 ("[*I*]*t is a third party (the obligee), not the principal, who is protected*, although the principal pays the premium."); *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1160 (Fed.Cir.1985) (both the principal and surety are liable to the obligee). The Fourth District Court of Appeal of California observed that ***"it is not the duty of the surety to protect the principal as if the principal were the insured under an insurance policy. The surety's duty runs to the third party obligee***." *Schmitt v. Insurance Co. of North America,* 230 Cal.App.3d 245, 281 Cal.Rptr. 261, 269 (1991).

> *Id.* at 1352 (emphasis added).

The same reasoning applied by this Court in *Ginn* is applicable to the Plaintiffs' claim for breach of contract in the instant matter, i.e. "it is not the duty of the surety to protect the principal as if the principal were the insured under an insurance policy. The surety's duty runs to the third party obligee." *Id.*, citing, *Schmitt v. Insurance Co. of North America*, 281 Cal. Rptr. 261, 269 (1991).  If there is no duty owed by a surety to its principal under an extra contractual theory, absent specific language in the performance bonds to the contrary[2], there is clearly no contractual duty either.

---

[2] As argued below, the performance bonds in this case directly align with Ginn because they contain a "no right of action" provision that expressly precludes any claims by any party other than the Obligee.

The Florida Supreme Court has provided further guidance on this issue by providing a clear definition of suretyship identifying the duties and obligations of each party to the tripartite relationship.  Specifically, the Florida Supreme Court provided the following definition:

> In general, suretyship has been defined as a contractual tripartite relationship in which one party (the surety) guarantees to another party (the obligee) that a third party (the principal) will perform a contract in accordance with its terms and conditions. The surety promises the obligee to answer the debt, default, or miscarriage of the principal. Suretyship is a form of guaranty. In exchange for a premium, the surety lends its financial strength and credit to the principal on the condition that, if the surety has to satisfy the principal's debt or default, the principal will indemnify the surety for its losses and expenses. In essence, the surety becomes the guarantor of the principal's ability to perform its obligations to the obligee. Given this description, it is reasonable to conclude that an owner/obligee, by requiring that a bond be obtained by the principal, is essentially insuring itself from potential losses that would result in the event the principal defaults on its obligations required by the underlying construction contract.

*Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.,* 945 So.2d 1216, 1226 (Fla.2006); see also *Great American Insurance Company v. School Board of Broward County*, 2010 WL 4366865 (S.D. Fla. 2010); *Liberty Mutual Insurance Company v. Aventura Engineering & Construction Corp.*, 534 F.Supp.2d 1290 (S.D. Fla. 2008)

As defined by the Florida Supreme Court, a surety under a performance bond does not owe any obligations or guarantee to its principal, aside from the obligation to post the bond in favor of the obligee upon receipt of premium from the principal.  In other words, once the bond is posted, and if certain conditions identified in the bond are satisfied, the surety "becomes the guarantor of the principal's ability to perform its obligations *to the obligee*."  There is no basis in law or fact establishing any obligations that flow from the surety to its principal. This argument is bolstered by the testimony of the Carles Construction corporate representative who admitted

that Plaintiffs had no knowledge of any bond provision that Travelers breached.  Specifically,

Mr. Carles testified:

> Q:   I want to ask you if you can tell me what provisions of - - and it looks like its pages - - I'm sorry, it looks like it's the third and fourth pages of the performance bonds in Exhibit 3.  Can you tell me what provisions of the performance bonds that Travelers breached?
>
> A:   No, I cannot.
>
> Q:   Do you know if Travelers breached any of the provisions of the performance bond?
>
> A:   No, I do not.
>
> [Carles Depo., pp 32, ln 9 – 18]

The performance bonds issued by Travelers in this case clearly and unambiguously set forth the respective obligations and duties of each member of the tripartite suretyship relationship.  [Dkt 111, Exhibit "C"].  A bond is a contract and subject to the general law of contracts. *Am. Home Assurance Co. v. Larkin Gen. Hospital, Ltd.,* 593 So.2d 195, 197 (Fla. 1992).  As such, the Surety's liability is strictly limited to the terms of the bond and should not be expanded by implication.  *Id.* at 197-198 (citing: *State v. Wesley Constr. Co.,* 316 F. Supp 490-497 (S.D. Fla. 1970), *affirmed*, 453 F. 2d 1366 (5th Cir. 1972).  The Surety does not undertake to do more than that expressed in the bond, and has the right to stand upon the strict terms of the obligation as to its liability thereon. *Am. Home* at 198 (citing with approval *Crabtree v. Aetna Cas. & Sur. Co.,* 438 So.2d 102 ( Fla. 1st DCA 1983).  Under Florida law, courts must give effect to the plain language of a contract where that language is clear and unambiguous. *Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d 1228, 1246 (11th Cir. 2002); *Florida Association of Counties Trust v. Polk County*, 722 So.2d 883, 884 (Fla. 2d DCA 1998); *Liberty Mutual Insurance Co. v. Capelleti Brothers, Inc.*, 699 So.2d 736, 738 (Fla. 3d DCA 1997).

Here, the express language of the performance bonds identified that any obligation owed by Travelers, if any, flowed only to the obligee. Specifically, the first paragraph of the performance bonds state that the Principal and Surety "are held and firmly bound unto Facchina-McGaughan, LLC as Obligee…and bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents." [Dkt 111, Exhibit "C"]. Furthermore, the performance bond expressly states, "No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or in any Rider attached hereto or the heirs, executors, administrators or successors of any such Obligee." [Dkt 111, Exhibit "C"] Plaintiffs' are *not* the Obligee under the performance bonds, and are not the heir, executor, administrator or successor of the Obligee. Thus, pursuant to the express language of the performance bonds, Plaintiffs' are precluded from making a claim on the Bond., and thus have no standing to assert a claim against Travelers.

Under analogous circumstances, several courts have construed the "no right of action" language contained similar bonds to even prohibit an action by an "assignee" because that terms was not excluded from the "no cause of action" provision. *TRST Atlanta, Inc. v. 1815 The Exchange, Inc.*, 220 Ga. App 184 (Ga. Ct. App. 1996). In *TRST Atlanta*, the plaintiff brought an action against the general contractor and the surety on an AIA A312 bond. The lawsuit alleged the general contractor's failure to perform certain construction work on a high-rise building in Midtown Atlanta. *Id.* at 239. Like the performance bonds here, the surety and contractor bound themselves to the obligee. The performance bond in *TRST Atlanta* also provided that "[n]o right of action shall accrue on this bond to or for the use of any person or corporation other than the named obligee herein or the heirs, executors, administrators, or successors of Owner." *Id.*

The trial court in *TRST Atlanta* concluded that the plaintiff was only an assignee and not a successor, and, as a consequence, ruled that the plaintiff was not authorized to recover against the surety or the performance bond. *Id.* at 240. The appellate court affirmed summary judgment in the surety's favor, recognizing that the plaintiff was precluded from asserting a claim as "[a mere] assignee of the obligee." *Id.*

Similarly, in *Southern Patrician Associates v. International Fidelity Ins. Co.,* 381 S.E. 2d 98 (Ga. App. 1989) the court also addressed the no right of action clause. Just as in *TRST Atlanta* the court ruled the language "specifically and unambiguously" excluded assignees from those who had standing to assert a cause of action on the bond. *Id.* at 99. See also, *Augusta Court Co-Owners' Association v. Levin, Roth & Kasner, P.C.*, 971 S.W. 2d 119 (Tex. App. 1998) (Holding that the exclusion of "assigns" in the no right of action clause clearly and unambiguously precluded an assignee from pursuing the surety under the bond.)

The Florida Legislature has also weighed in on the subject. Florida Statute § 627.756 (2) provides in pertinent part:

> "Further a right of action does not accrue on a bond to or for the use of any person other than the named obligee."

Courts have also construed the no right of action provision to preclude third-parties from making a claim on the bond. See *Aetna Insurance Co. v. Estero Manufacturing,* 174 So.2d 747 (Fla. 2nd DCA 1965) ("Under this provision of the bond only the owners who were the obligees above have a right of action against the surety."); *American Fire and Cas. Co. v. Charles Sales Corp. of Orlando,* 203 So.2d 670 (Fla. 4th DCA 1967) ("by the terms of the bond, the surety was bound only to the Contractor [in that case the named obligee] and the unambiguous terms of the bond may not be construed and expanded to cover the claim of [another]");

Similarly, in *Beach Point Condo Assoc. v. Beach Point Corp.,* 480 So.2d 289 (Fla. 4th DCA 1985) the court addressed whether any right of action could exist in favor of a "third party beneficiary" who was not a named obligee. In *Beach Point,* a Condominium Association sought to assert a claim against the surety on a performance bond that had been secured by the previous Owner/Developer of the Condominiums. The Fourth District Court of Appeal rejected the Condominium Association's argument holding the: "bond's provisions were unambiguous" as to who was benefitted.

Based upon the foregoing, Travelers' liability is limited by the express terms of the performance bonds, and Plaintiffs have no right of action against Travelers under such terms. Accordingly, summary judgment in favor of Travelers is appropriate on Count I of Plaintiffs' Second Amended Complaint as a matter of law.

### E. Travelers Is Entitled To Judgment As A Matter Of Law On Count II Of The Second Amended Complaint [Dkt. 108] Because Plaintiffs Have Not Produced Any Evidence Satisfying the Requirements of Their Claim

Travelers is entitled to judgment as a matter of law on Count II of Plaintiffs' Second Amended Complaint because Plaintiffs' have failed to come forth with any evidence establishing the required elements for a civil conspiracy claim.  Looking first at the language pled by Plaintiffs, Count II of Plaintiffs' Second Amended Complaint contains only a single substantive allegation describing the alleged conspiracy by stating:

> Travelers overtly and fraudulently misrepresented Facchina's claims against Carles Construction by blatantly ignoring its own expert report, reversing its own legal opinions, and subsequently orchestrating a settlement to fraudulently eliminate Carles Construction's claims against Facchina, for which Travelers was liable, in favor of its own client, Facchina.
> [Dkt. 108, ¶ 24]

Plaintiffs' Second Amended Complaint purports to allege an underlying tort of fraud. However, the allegations in the Second Amended Complaint fail to meet the heightened pleading

standard required for fraud under Fed. R. Civ. P. 9, and provide no details of the alleged fraud other than what is plead in paragraph 24.   Furthermore, and notwithstanding the heightened pleading standard, Plaintiffs admit that there is not additional evidence supporting their claim that Travelers' conspired with Facchina-McGaughan as alleged in Count II.

Because Plaintiffs' allege that Travelers conspired with Facchina-McGaughan, Plaintiffs' have the burden of producing some evidence from one of those two parties showing conduct or actions in furtherance of the alleged conspiracy.   In fact, pursuant to Fed. R. Civ. P. 11 (b), Plaintiffs were required to have a good faith basis for presenting the civil conspiracy claim when it was pled.   This is especially true in light of the fact that the original complaint was filed on November 3, 2010, it was filed without a civil conspiracy claim.   One-year later, on November 7, 2011, Plaintiffs' sought leave of court to add a claim for civil conspiracy [Dkt. 47], and subsequently filed a Corrected Amended Complaint on March 9, 2012 with same claim [Dkt. 66].   If Plaintiffs' believed that facts had arisen providing a good faith basis to seek relief for an alleged civil conspiracy between the filing of the original Complaint and the Corrected Amended Complaint, presumably Plaintiffs should have been able to enumerate those facts when questioned.   However, when Plaintiffs' testified about the basis for the civil conspiracy claim they were unable to provide any factual basis for the claim.[3]   Specifically, Mr. Carles, testifying individually and as the Carles Construction's corporate representative, testified as follows:

> Q:   Are you aware that part of what is being proposed as an affirmative claim against Travelers is a claim for civil conspiracy?  That Travelers somehow conspired with Facchina-McGaughan to eliminate Carles Construction's claim?

---

[3] Ms. Maria Carles, who is also named as a Plaintiff, testified repeatedly throughout her deposition that she was not aware that she had filed affirmative claims against Travelers [Maria Carles Depo., pp 12, ln 12 – 23; pp 13 – 14, ln 25 – 15; ], never knew she was part of a lawsuit until she began receiving court filings after Travelers responded [Maria Carles Depo., pp 21 – 23, ln 14 – 6; pp 23 – 24, ln 8 – 11; pp 32, ln 3 – 21], and had no information independent from her husband related to the claims or the Projects [Maria Carles Depo., pp 24 – 26, ln 12 – 11; pp 30 – 31, ln 23 – 5].

A:      I don't know what you're asking me, so I'm going to have to say no.

Q:      Do you believe that Travelers - - do you have any information to show that Travelers conspired with Facchina-McGaughan to get rid of Carles Construction's claims?

A:      There's absolutely no way for me to know what happened between Facchina-McGaughan and Travelers…[4]The answer to your question is, I have no idea what goes on behind my back.  So the answer is no.

Q:      You haven't seen any letters or documents - -

A:      I haven't seen anything.

Q:      - - that say Travelers and Facchina did anything to conspire together to get rid of your claim.  Whether the claim was ultimately settled or not, that Facchina and Travelers worked together to do that?

A:      No.

        [Carles Depo., pp 56 – 58, ln 23 – 6]

In addition to the testimony above, it is uncontested that Plaintiffs did nothing to verify their belief that a conspiracy existed, never discussed the alleged conspiracy with Facchina-McGaughan, and have no basis or understanding of any prior relationship between Travelers and Facchina-McGaughan, and after almost three (3) years of litigation, Plaintiffs' still have produced no evidence in support of their claim.

To the contrary, Travelers corporate representative was also deposed in this action.  The only testimony elicited from the Travelers representative on this issue is as follows:

Q:      In handling this claim, did Travelers show any favoritism toward Facchina based on its prior business relationship, meaning Paul Facchina or Facchina entity, prior business relationship?

---

[4] The ellipsis was added here to preserve the objection raised by undersigned counsel during the deposition to any testimony regarding communications held during the mediation pursuant to the statutory mediation privilege, because the underlying mediation was conducted under Florida law, and Travelers and the statute requires all parties to waive the privilege. See § 44.405 (4), Fla. Stat.  Here, notwithstanding Travelers denial of Carles' incorrect recitation of alleged communications occurring during the mediation, Travelers expressly preserved its objection to any attempted violation of the statutory privilege. Travelers' motion for protective order regarding this privilege is filed at [Dkt. 68].

A:      Certainly no.

Q:      Did that ever come to light in any discussions between you and your boss or anybody else?

A:      Certainly not.

[Travelers Depo., pp 95 – 96, ln 18 – 2]

Additionally, Travelers Second Vice President, Mark Marino, who was responsible for managing the claim unit handling the claims asserted by Facchina-McGaughan against Carles, testified:

Q.      Now, at any point in time, did you have any discussion with Facchina-McGaughan or Paul   Facchina regarding settlement of this claim?  In other words, when somebody from Facchina-McGaughan called you and worked out the parameters of the settlement whereby Carles Construction's claims would be absorbed in the settlement and it was done so for the purposes of maintaining any further business relationship with Facchina-McGaughan?

A.      No.

Q.      Have you ever talked to Paul Facchina?

A.      No.

Q.      Have you ever seen him?

A.      No.

Q.      Were you directed by anybody at Travelers, anywhere in your chain of command or if even outside of the chain of command, to settle this claim under the parameters in which it settled in order to preserve a business relationship with Facchina-McGaughan?

A.      No.

Q.      Same question with regard to Paul Facchina?

A.      No.

[Marino Depo., pp 57 – 58, ln 11 – 9]

Thus, after three (3) years of litigation, the only evidence related to any alleged civil conspiracy is: 1) Plaintiffs' who admit that they have no evidence; and 2) Travelers who states that it did not happen.  Aside from a single vague, self-serving and conclusory allegation in the Second Amended Complaint, Plaintiffs have not come forth with any information supporting their claim for civil conspiracy.  Accordingly, Travelers is entitled to judgment as a matter of law on Count II of Plaintiffs' Second Amended Complaint.

Additionally, "a meritorious cause of action for civil conspiracy requires: (1) an agreement between two or more parties; (2) to perform an unlawful act or a lawful act by illegal means; (3) some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of acts done under the conspiracy. Thus, an actionable conspiracy requires an actionable underlying tort or wrong." *Sperry Associates Federal Credit Union v. Space Coast Credit Union*, 877 F. Supp. 2d 1227, 1252 (M.D. Fla. 2012), citing *Bray & Gillespie Management LLC v. Lexington Ins. Co.,* 527 F.Supp.2d 1355, 1370 (M.D.Fla.2007) (citation omitted).

Here, the only "actionable underlying tort or wrong" purportedly alleged by Plaintiffs' is a claim that Travelers "fraudulently misrepresented Facchina's claims" and "orchestrating a settlement to fraudulently eliminate Carles Construction's claims against Facchina."   As mentioned above, Plaintiffs' failed to properly plead fraud in accordance with Fed. R. Civ. P. 9, or provide any evidence that would establish a fraud.  Furthermore, "an act which does not constitute a cause of action against one person cannot be made the basis of a civil action for conspiracy."  *Kee v. National Reserve Life Insurance Co.*, 918 F. 2d 1538, 1542 (11th Cir. 1990).

Although not well articulated, the Plaintiffs' true claim in the Count II amounts to a claim that Travelers somehow acted improperly by settling the competing claims of Facchina-McGaughan and Carles Construction in favor of Facchina-McGaughan.  However, the fact that

19

Travelers settled the competing claims in favor of Facchina-McGaughan does not constitute a basis for a cause of action against Travelers. *See The Guarantee Co. of N. Am. USA v. Mercon Constr. Co., et al.*, 2012 WL 1232104 (M.D. Fla. Apr. 12, 2012).  In *Mercon*, a principal sought damages for the surety's settlement of the principal's affirmative claims against the obligee's surety.  The principal argued that the right to settle claims provision of the indemnity agreement applied only to claims against the surety, and not the principal's affirmative bond claims.  The surety pointed to other provisions of the indemnity agreement that assigned the affirmative claim to the surety.  The court agreed with the surety and dismissed the principal's affirmative claim. In doing so, the court held, "even if Article 12 did not give [Surety] the right to settle [Principal's] claim against the payment bond, doing so would ***not*** have constituted a breach of the indemnity agreement. "  *Id* at *1 (emphasis added).

Thus, Travelers actions in settling Plaintiffs' affirmative claims against Facchina-McGaughan do not constitute a basis for a cause of action against Travelers.  Therefore, under Florida law, Plaintiffs have no independent basis for a cause of action against Travelers and cannot maintain their claim for civil conspiracy.  Accordingly, summary judgment in favor of Travelers is appropriate on Count II of Plaintiffs' Second Amended Complaint as a matter of law.

## CONCLUSION

For the foregoing reasons, Travelers respectfully requests this court enter summary judgment in favor of Travelers on all counts of Plaintiffs' Second Amended Complaint, along with any such further relief this court deems just and proper.

Dated:  July 8, 2013

Respectfully submitted,

 /s/ Kevin M. Mekler
E.A. "SETH" MILLS, JR., ESQ.
Florida Bar No. 339652
smills@mpdlegal.com
KEVIN M. MEKLER, ESQ.
Florida Bar No. 0856711
kmekler@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa Street, Suite 2010
Tampa, Florida 33602
(813) 229-3500 - Telephone
(813) 229-3502 - Facsimile
*Attorney for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2013 the foregoing document was served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner to those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

 /s/ Kevin M. Mekler
Attorney

## SERVICE LIST

**Maury L. Udell, Esq.**
mudell@bmulaw.com
Beighley, Myrick & Udell, P.A.
66 West Flagler Street, 7th Floor
Miami, Florida 33130
Telephone (305) 349-3930
Fax (305) 349-3931
*Served via CM/ECF*