IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-CV-23645-WMH

CARLES CONSTRUCTION, INC.,
a Florida corporation, REINALDO
CARLES, and MARIA C. CARLES,

    Plaintiffs,

v.

TRAVELERS CASUALTY &
SURETY COMPANY OF AMERICA,
a foreign corporation,

    Defendant.
_____/

**TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA ("Travelers"), through its counsel, and pursuant to FED. R. CIV. P. 56 and Rules 7.1 and 56.1 of the Local Rules of this Court, moves for summary judgment against Counterdefendants, CARLES CONSTRUCTION, INC. ("Carles"), REINALDO CARLES, and MARIA C. CARLES, and Third Party Defendant, CARLES MANGEMENT, INC. ("CMI") (collectively referred to as the "Indemnitors") because there is no genuine issue as to any material fact with respect to the Indemnitors' contractual indemnity obligations to Travelers.

**I.    SUMMARY OF ARGUMENT**

Travelers seeks summary judgment against the Indemnitors resulting from substantial losses Travelers has suffered, and continues to suffer, as a result of issuing payment and performance bonds to Carles, and as a result of the Indemnitors' failures to honor their joint and

several indemnity obligations to Travelers pursuant to a General Agreement of Indemnity ("Indemnity Agreement") the Indemnitors signed.

The Indemnitors have breached their responsibilities under the Indemnity Agreement by, among other things, failing or refusing to reimburse Travelers for any of the monies it paid to investigate, defend, and ultimately satisfy its obligations under the bonds Travelers issued naming Carles as principal (the "Bonds"). The Indemnitors cannot, and have not, presented any evidence suggesting that Travelers acted improperly in making any payments pursuant to its obligations under its bonds.

The express and unambiguous terms of the Indemnity Agreement, and this Court's previous decisions regarding a surety's indemnity rights, entitle Travelers to summary judgment against the Indemnitors for the total amount of $4,246,869.35 for Travelers' damages as a result of having issued bonds on Carles' behalf.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if there are no genuine issues of material fact.  *See Ward v. County of Orange*, 217 F.3d 1350, 1353 (11th Cir. 2000); Fed. R. Civ. P. 56(c). The movant has the initial burden of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits if any,'" that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Upon this showing, the burden shifts to the non-moving party. The opponent "must do more than simply show that there is a metaphysical doubt as to the material facts," it must demonstrate a "genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials

in its own pleading[s]." Rule 56(e)(2), FED.R.CIV.P. Rather, the non-moving party must establish, through the record presented to the Court, that it is capable of providing evidence sufficient for a reasonable jury to return a verdict in its favor. *See Cohen v. United Am. Bank*, 83 F. 3d 1347, 1349 (11th Cir. 1996). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *CC-Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 2699577, *2 (S.D. Fla. 2008) (citations omitted); *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

### III.   STATEMENT OF MATERIAL FACTS

Contemporaneously with filing this Motion, Travelers filed its Statement of Material Facts ("SMF") in Support of Motion for Summary Judgment pursuant to Local Rule 56.1. The SMF includes and cites Travelers' evidence in support of this Motion. Travelers incorporates into this Motion the SMF, all of its attached evidence and exhibits, and all other evidence referred to therein.

### IV.   ARGUMENT

This Court has repeatedly held that a surety is entitled to summary judgment against its indemnitors for damages it incurs as a result of issuing payment and performance bonds. *See e.g. Liberty Mut. Ins. Co. v. Aventura Eng. & Constr. Corp.*, 534 F. Supp. 2d 1290, 1326 (S.D. Fla. 2008); *see also Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1104 (S.D. Fla. 1990) (holding that "Final Summary Judgment is appropriate as a matter of law" in favor of the surety and against the indemnitors for damages the surety incurred for issuing payment and performance bonds). Other Florida case law is likewise clear that a surety's indemnity claim is particularly suited for summary judgment. *See Sork v. United Benefit Fire*

*Ins. Co.*, 161 So. 2d 54, 55 (Fla. 3d DCA 1964) (holding that summary judgment was appropriate in favor of a surety against an indemnitor under an indemnity agreement).

As more fully addressed below, the following is undisputed: the Indemnitors signed the Indemnity Agreement [SMF at ¶¶3-4], Travelers then issued payment and performance bonds at Carles' request [SMF at ¶6], Carles failed to perform its obligations under the contracts that Travelers bonded [SMF at ¶7], and as a result, Travelers incurred losses in the form of payments to claimants, consultants and attorneys. [SMF at ¶¶9-15]. Pursuant to the terms of the Indemnity Agreement, Travelers made a request for collateral and indemnity to the Indemnitors, but never received any funds. [SMF at ¶¶ 10-11]. For the reasons stated herein, this Court should enter summary Judgment in Travelers' favor and against the Indemnitors for the losses it has incurred as a result of issuing Bonds naming Carles as principal.

  a. **The Indemnitors Breached The Indemnity Agreement And Are Liable To Travelers For Travelers' Losses.**

Courts have consistently enforced written surety indemnity agreements and the remedies granted to sureties therein. *See, The Revenue Markets, Inc. v. Amwest Surety*, 35 F.Supp.2d 899 (S.D. Fla. 1998); *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F.Supp. 1100, 1103-04 (S.D. Fla. 1990); *Thurston v. International Fidelity Ins. Co.*, 528 So.2d 128, 129 (Fla. 3d DCA 1988). As set forth in detail below, this Court's holding and analysis in *Liberty Mut. Ins. Co. v. Aventura Eng. & Constr. Corp., supra,* ("*Aventura*"), and other cases, compels the entry of summary judgment in Travelers' favor. In *Aventura*, this Court provided an extensive overview of suretyship (including a discussion of the surety's "vital role" in the construction industry, its right to settle claims against its bonds, and its rights at common law and under indemnity agreements) before holding that the surety was entitled to summary judgment.

In *Aventura*, the surety sought summary judgment, among other relief, under its indemnity agreement for losses it incurred as a result of issuing bonds naming a contractor, Aventura Engineering & Construction Company, as principal. *Id.* at 1292. There, like here, the surety required the contractor and other individuals to sign an indemnity agreement in the surety's favor before the surety issued any bonds naming the contractor as principal. *Id.* at 1293. Also, like here, after the indemnitors signed the indemnity agreement, and in reliance on its rights under the indemnity agreement, the surety issued payment and performance bonds naming the contractor as principal. *Id.* at 1295-1296. Finally, like in *Aventura*, the surety suffered losses as a result of having issues the bonds and requested that Aventura post collateral to protect the surety's interest. Aventura, like the Indemnitors here refused to do so.

In *Aventura*, the surety received notice of a potential claim against one of the bonds. *Id.* at 1297. The contractor (principal) was later terminated from the project, and the project owner demanded that the surety complete the project according to its obligations under the bond. *Id.* at 1298. The surety incurred damages of $2,755,936.51 as a result of the claims against the bond, which included the surety's costs to satisfy the bond claims, its investigative costs, and its attorneys' fees. *Id.* at 1301. The surety demanded reimbursement from the indemnitors for its losses, but the indemnitors failed to comply. *Id.* at 1300-1301.

The Surety in *Aventura*, moved for summary judgment in its action against the indemnitors, arguing that Aventura breached the indemnity Agreement by failing to provide collateral upon demand, by demanding that the surety deny the obligee's claim without posting or agreeing to post collateral, and by failing to indemnify the surety. In granting the surety's summary judgment motion, this Court stated that "a surety is entitled to reimbursement for any payments made by it in good faith belief that it was required to pay, regardless of whether any

5

liability actually existed." *Id.* at 1318.  Had the indemnitors wanted the surety to defend against the claim, this Court noted that the indemnitors could have posted collateral security with the surety.  *Id.* at 1317.  After citing numerous authorities, including cases from Florida State and Federal courts, the Court held, "[b]oth because this case arises under a written indemnity agreement, and because there is no material dispute of fact that [the bond principal] had notice of the claims, Travelers is entitled to indemnity upon a showing of potential liability under the … Bond." *Id.* at 1320.

Here, the undisputed facts compel the entry of summary judgment as in *Aventura*.  Just like in *Aventura*, Travelers issued payment and performance bonds following the Indemnitors' execution of the Indemnity Agreement.  [SMF at ¶¶3, 4 & 6].  FMG here, similar to the obligee in *Aventura*, defaulted and terminated Carles, and made a claim against Travelers under the performance bond.  [SMF at ¶8]. Also, like in *Aventura*,  Travelers incurred losses by making payments of its own funds to pay claims asserted by the obligee, FMG, under the Performance Bond ($3,550,000), and by a claimant, Shore/Form, under the Payment Bond ($214,000).  [SMF at ¶¶9 & 13].

Travelers also incurred additional losses by making payments of its own funds to Consultants ($244,482.49), Attorneys ($214,438.82), Vendors ($16,658.33) and Internal Costs ($7,289.71) related to the Bond claims. It is also undisputed that Travelers made a demand that the Indemnitors post collateral but the Indemnitors have failed and refused to reimburse Travelers for any of its losses; which is an undisputed breach of the Indemnity Agreement.  [SMF at ¶¶9 & 14].

The foregoing undisputed facts establish the Indemnitors' liability according to the unambiguous provisions of the Indemnity Agreement, which the Indemnitors admit they each

6

signed.  [SMF at ¶4].  Specifically, the Indemnity Agreement provides, in part, that the Indemnitors shall

> Exonerate, indemnify and save the Company harmless from and against every claim, loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds.  Expense includes but is not limited to; the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors.  Amounts due Company shall be payable upon demand.

[SMF at ¶5a].

Had the Indemnitors wanted Travelers to defend against any claim asserted against the Bonds, or not make payments to ensure satisfaction of its bonded obligations, the Indemnitors here, just like the indemnitors in *Aventura*, could have posted collateral security with Travelers, as Travelers had requested.  *See Aventura*, 534 F. Supp. 2d at 1317.  None of the Indemnitors ever posted collateral security, however.  [SMF at ¶11].  As the Indemnity Agreement provides, "Amounts due Company shall be payable upon demand." [SMF at ¶5a].

Furthermore, Travelers acted within its rights to settle the performance bond claim and make payments to FMG pursuant to the terms of the Indemnity Agreement  *See Aventura*, 534 F. Supp. 2d at 1308 .  As the Indemnity Agreement provides,

> The Company shall have the right, in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors.  An itemized, sworn, statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of the Indemnitors' liability.  The Company shall be entitled to immediate

7

> reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

[SMF at ¶5b].

Finally, once the Indemnitors refused to post collateral or indemnify Travelers under the terms of the Indemnity Agreement, Travelers acted within its rights to settle the performance bond claim and make payments to FMG pursuant to the terms of the Indemnity Agreement because Carles had committed a Default under the terms of the Indemnity Agreement. *See Id*. Specifically, the Indemnity Agreement provides in pertinent part:

> Default: Any of the following shall constitute a Default: … (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract.
>
> [SMF at ¶5c]
>
> Remedies:  In the event of a Default, Indemnitors assign, convey, and transfer to the Company all of their rights and interest growing in any manner out of the Contracts…In addition, in the event of a Default, the Company shall have a right in sole discretion to: …
>
> (c) Assert or prosecute any right or claim in the name of the Indemnitors and to settle any such right or claim as the Company sees fit;
>
> [SMF at ¶5d]

Plaintiffs admitted that they were in Default under the terms of the Indemnity Agreement because they failed and refused to indemnify Travelers' and/or post collateral security. [SMF at ¶14]. Plaintiffs' also admitted that once they breached the Indemnity Agreement, Travelers had the right to settle with FMG. [SMF at ¶17]. Furthermore, it is uncontested that Travelers was forced to resolve and pay the Shore/Form Litigation when Plaintiffs failed and refused to do so

[SMF at ¶¶9, 12 & 13].  This failure is an additional breach of the Indemnity Agreement. [SMF at ¶5c]  *See id.* at 1319.

Thus, both factually and legally, there is no dispute that the Indemnitors have breached and are liable under the Indemnity Agreement.  Because there is no genuine issue as to any material fact regarding the Indemnitors' breach of their obligations under the Indemnity Agreement, the holdings in cases such as *Aventura* and others establish that Travelers is entitled to summary judgment against the Indemnitors as a matter of law.

### b.  **The Indemnitors' Bad Faith Defense Fail As A Matter Of Law.**

Plaintiffs' Eighth Affirmative Defense stated in pertinent part, "[d]efendant breached the contracts between the parties by acting in bad faith in settling Carles Construction's claim against FMG for no renumeration [sic] without the consent of the Plaintiffs." [Dkt. 109].  As this Court has held, it is well-settled that the only potential defense to a surety's contractual indemnity claim is the surety's bad faith in paying claims.  *Great American Ins. Co. v. General Contractors & Contr. Management Co.*, 2008 WL 2245986, *4 (S.D. Fla. 2008) ("With respect to defenses, it is well settled that the only defense to indemnity is bad faith on the part of the surety.").  To prove bad faith, an indemnitor must show that the surety acted with deliberate malfeasance, which, "by definition, is an intentional wrongful act which the actor has no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty." *Aventura*, 534 F. Supp. 2d at 1319.  A "lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith." *Id.*

The Indemnitors provided no evidence (and can provide no evidence) whatsoever that Travelers acted in bad faith when it made the payments to the Claimants, Attorneys, Consultants, Vendors and Internal Costs, or when it settled the Underlying Litigation.  To the contrary, the

evidence clearly demonstrates that Travelers had every right to make the above payments as set forth by the terms of the indemnity agreement. More importantly, the Indemnitors' failure to post the requested collateral is fatal to their bad faith defense. As succinctly stated in *Aventura*, "Aventura's failure to post the demanded collateral negates any claim of bad faith. It is undisputed that Defendants did not post the required collateral in order to arbitrate its claim…this failure to comply with the clear terms of the Indemnity Agreement defeats, as a matter of law, Defendants claim of bad faith." *Id*. at 1316. Based upon the undisputed facts in the record, the Indemnitors' affirmative defense of bad faith fails on this point alone.

The Indemnitors' have made numerous generic assertions throughout this litigation regarding their belief that Travelers did not settle the Underlying Litigation in good faith.[1] Because the Indemnitors failed to include any *factual basis* for their affirmative defenses, the Indemnitors' assertions can only be evaluated by reviewing the allegations of their affirmative claims against Travelers. The only allegations in the Second Amended Complaint that could even potentially be viewed as a basis for a bad faith claim are the allegations that Travelers "disregarded its own expert reports, has reversed its own legal opinions, and orchestrated a settlement wherein claims of Carles Construction have been jettisoned in favor of Facchina, also its principal on both bonds, limiting its exposure in total, to the detriment of its principal Carles Construction." [Dkt. 108, ¶20].

The claim that Travelers "disregarded its own expert reports" is completely false and has no basis in fact. Travelers' scheduling expert, Don Carlow, found that at least part of FMG's delay claim was undisputed. [Dkt. 120, pg 19, ln 1-15]   Moreover, at the time Mr. Carlow prepared

---

[1] The Indemnitors' only focus has been on Travelers' settlement of the Underlying Litigation. There is no dispute regarding the remaining losses incurred by Travelers, and accordingly, Travelers is entitled to Indemnity for all losses other than the $3,550,000 settlement payment to FMG. For the reasons stated herein, Travelers is also entitled to the settlement payment because Carles' Eighth Affirmative Defense fails as a matter of law.

his schedule analysis, Travelers was facing an opposing expert who asserted a claim for 236 days of delays. Travelers was faced with competing expert reports that ranged from 31 days to 236 days of delay attributable to Carles. [Dkt. 120, pp 35-36, ln 11 - 12]. Additionally, at the time of settlement, Carles had not (1) retained any expert in support of its affirmative claims [SMF, ¶18], (2) provided Travelers with any documentation supporting its affirmative claims [SMF, ¶18], or (3) posted any collateral [SMF, ¶ 11].

Contrary to the Indemnitors' unsupported assertions that Travelers "orchestrated a settlement" favoring FMG's claims over those of Carles, the record evidence shows that Travelers decision to settle the competing claims between FMG and Carles was based upon the following factors revealed during its independent investigation: 1) actions or inactions of Carles' counsel in defending and prosecuting the claims;[2] 2) expert reports from FMG's experts[3]; 3) expert reports from Travelers' experts[4]; 4) analysis of the documentation presented by FMG in support of its claims[5]; 5) the lack of supporting evidence from Carles[6]; and 6) analysis of the risk to Travelers if the claims proceeded to final hearing[7]. [SMF, ¶ 19]

---

[2] "Well, what I did is I knew, went into the office before our mediation, sat down with Rei and his attorney and said what do you have? And the response I got was, we got Rei. That's it. No expert. No documentation. I think there was a slide show that showed the building going up. And in my experience and in the experience of people who are with me, you know, my manager and everybody else, that is not how you defend a $16 million claim. And it is also not how you prosecute a $4.5. That is not going to hold water when you are going up against the other side who has a bevy of lawyers and consultants and documents to support their claim." (Travelers Depo., pp 69, ln 5-19)

[3] "[I]n this particular incident, we are dealing with two experts, one expert [FMG's] that says its worth everything and the other expert [Travelers'] that says that it is worth something. And we have to make a determination based on those two potentials." (Travelers' Depo, pp 50-51, ln 22-3)

[4] "What we looked at was what proofs were there and we had Rei. Again, they didn't have that discovery done. They didn't have any, you know, no experts to support the claim. Kerry Lewis did very little to prosecute that claim." (Travelers Depo, pp 63, ln 12-16). See also FN 3.

[5] "Our consultants wound up reviewing hundreds of thousands of documents, change orders and time cards and time sheets and work orders and all a host of things that they ended up reviewing for this report." (Travelers Depo, pp. 69-70, ln 22-1)

[6] See FN 3 & 4.

11

Although not part of the operative Complaint, Reinaldo Carles, Jr. filed an affidavit in opposition to Travelers motion for summary judgment on the Indemnitors' affirmative claims which alleged "bad faith" conduct by Travelers during a mediation in the Underlying Litigation. Travelers has moved to strike this affidavit on the ground that it willfully and intentionally violates the mediation confidentiality privilege codified in Chapter 44, Fla. Stat. [Dkt. 126] Travelers disputes Plaintiffs' recitation of communications during the underlying mediation. Travelers has not, and does not waive the confidentiality of the underlying mediation, and will not be manipulated into waiving its privilege by specifically responding to Plaintiffs' false representations. Even assuming that Mr. Carles' affidavit is correct, which it is not, the allegations do nothing to support the Indemnitors' Eight Affirmative Defense, and are intended solely to try and disparage Travelers before this Court.

Indemnitors' allegations of bad faith equate to nothing more than smoke and mirrors which are dispelled when viewed in light of the collateral demand that Travelers sent to the Indemnitors prior to settling the Underlying Litigation ("Collateral Demand"). [SMF, ¶10]. The Collateral Demand gave the Indemnitors a final opportunity to satisfy their obligations under the Indemnity Agreement by collateralizing Travelers. The Collateral Demand provided the Indemnitors with three options: 1) agree to indemnify Travelers for the $3,550,000 settlement amount with FMG; 2) post $5,000,000 in collateral with Travelers, and Travelers would forego the settlement with FMG so the case could proceed to arbitration, or 3) Travelers would execute the settlement agreement, pay FMG the $3,550,000 settlement amount, and reserve its rights to

---

[7] In addition to the other analysis described, "You've got to look at the venue we are in, which is an arbitration, which is, you know, it's hit or miss. You got to look at the cost of defending the matter. You got to look at the probability of loss, probability of winning, the cost of getting to those points. What it would cost us, you know, to get a home run, what it would cost to get to that point. You got to look at all of the various factors." (Travelers Depo., pp 81-82, ln 21-5)

12

seek indemnity. The Indemnitors' election of the third option, thereby shirking their obligations under the Indemnity Agreement resulted in the execution of the settlement. Notwithstanding Travelers' rights under the Indemnity Agreement "in its sole discretion, to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such Bond shall be paid, compromised, settled, defended or appealed", Travelers still gave the Indemnitors an opportunity to pursue its claims. Travelers exercised its contractual rights only after the Indemnitors' failed to comply with their indemnity obligations.

In *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt., Inc.*, 2008 WL 2245986, \*4 (S.D. Fla. 2008), the plaintiff surety issued payment and performance bonds naming the same contractor as principal for two projects. *Id.* at \*1-2. The defendant principal and individual defendant executed an indemnity agreement that required the indemnitors to exonerate and indemnify the surety from and against all liability for losses and expenses. *Id.* at \*1. The surety received a performance bond claim on one project and payment bond claims on both projects and the indemnitors refused to indemnify the surety against the bond claims. *Id.* at \*1-2. The court held that the surety was entitled to summary judgment on its indemnity claim against the indemnitors for the losses and expenses it incurred as a result of issuing bonds on both projects ***because the surety made a prima facie case that its payments were made in good faith where the indemnity agreement provides that evidence of payments by the surety shall be prima facie evidence of the fact and amount of liability to the surety.*** *Id.* at \*4.

*Great American* is squarely on point. Like the surety in *Great American*, (1) Travelers issued payment and performance bonds naming a contractor, Carles, as principal on multiple projects, (2) Travelers received claims on Bonds that it issued for multiple projects, (3) Carles failed to indemnify or collateralize Travelers from and against the Loss on the Bonds, (4) the

13

Indemnity Agreement requires that the Indemnitors exonerate, indemnify and collateralize Travelers, and (5) the Indemnity Agreement provides that "an itemized, sworn, statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of the Indemnitors' liability." [SMF at ¶5(b)] In its sworn statement, Travelers provided and swore to an itemization of its losses, evidencing the payments made in connection with the issuance of the Bonds, which is all that is required to demonstrate that it has acted in good faith . [SMF, Exhibit "A"]. Therefore, because Travelers has made its *prima facie* case that it made its payments on the Bonds in good faith, with evidence of payment being sufficient to demonstrate the *prima facie* case, Travelers is entitled to summary judgment on its indemnity claim.

### c. The Indemnitors' Remaining Affirmative Defenses Fail as a Matter of Law.

Indemnitors' bad faith defense fails for the reasons discussed above. Despite the fact that the only defense to indemnity is bad faith, the Indemnitors alleged multiple other affirmative defenses in an effort to avoid their clear indemnity obligations. Because these other affirmative defenses are not valid defenses to an indemnity claim as a matter of law, Travelers is entitled to summary judgment on these affirmative defenses.

As noted above, the only defense to indemnity is bad faith on the part of the surety. *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt., Inc.*, 2008 WL 2245986, *4 (S.D. Fla. 2008); *see also Liberty Mutual Ins. Co. v. Aventura Engineering & Construction Corp.*, 534 F. Supp. 2d 1290, 1318-1319-20 (S.D. Fla. 2008). The *Great American* court further provides that "[c]ourts have consistently upheld a surety's contractual rights so long as the surety acted in ***a good faith belief that it was required to act or pay, regardless of whether any liability existed.***"

*Id.* Thus, all affirmative defenses other than breach of the implied covenant of good faith fail as a matter of law and should be dismissed.

"On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable." *Office of Thrift Supervison, U.S. Dept. of Treas. v. Paul*, 985 F.Supp. 1465, 1470 (S.D. Fla. 1997), *citing Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). "[O]nce a properly supported motion for summary judgment has been made it is not incumbent upon the movant to produce evidence negating the existence of a genuine issue of fact as to issues or elements that the nonmovant must prove at trial." *Paul*, 985 F.Supp. at 1470 [citations omitted].

As noted above, the only defense to a surety's contractual indemnity claim is bad faith payment on the part of the surety. Even if its other defenses were available, the Indemnitors have provided no evidence whatsoever of the veracity of the allegations. Thus, the Indemnitors cannot carry their burden, as a matter of law, of proving any affirmative defense to liability on the Indemnity Agreement.

Since the Indemnitors' affirmative defenses are legally insufficient, Travelers is entitled to summary judgment dismissing the affirmative defenses.

### d. **Travelers' right to damages.**

This Court, and courts across the country, have held that a surety is entitled to recover its damages, losses, costs, attorneys' fees, and expenses for investigating, defending, and satisfying the claims against the bonds. *See e.g. Aventura*, 534 F. Supp. 2d at 1320; *see also Fidelity & Deposit Co. of Maryland v. Marian Professional Construction, Inc.*, 2004 WL 1718655 (N.D. Ill. July 29, 2004) (holding that the surety was entitled to summary judgment for all of its losses and expenses suffered by reason of having executed the bond, and expressly noting that the surety

had the right to settle claims and receive reimbursement in the absence of fraud or bad faith); *Anderson v. United States Fidelity & Guaranty Co.*, 600 S.E. 2d 712 (Ga. App. 2004) (question on summary judgment as to a surety's right to indemnity following payment of claim is not whether a factual dispute exists, but whether the surety exercised bad faith in paying the claim); and *Ulico Casualty Co. v. Atlantic Contracting & Material Co. Inc.*, 822 A.2d 1257 (Md. App. 2003) (holding that the surety was entitled to reimbursement for all payments made in good faith even though the trial court found that the surety paid for items the bond at issue did not cover).

This Court's holding in *Aventura*, that "under the unambiguous terms of the Indemnity Agreement, [the surety] is entitled to be reimbursed the [amount] it has incurred in connection with the … Bond[s]" equally applies here. 534 F. Supp. 2d at 1320. The Indemnity Agreement here, just like the indemnity agreement in *Aventura*, provides that evidence of Travelers' payments is *prima facie* evidence of the Indemnitors' liability to Travelers. [SMF at ¶5e]. Specifically, the Indemnity Agreement provides that in the event of a payment by Travelers:

> An itemized, sworn statement by an employee of the Company or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of Indemnitors' liability. The Company shall be entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments.

[SMF at ¶5e].

Chris Dugan's[8] Affidavit, and the exhibits attached thereto, reflect the payments Travelers has made, which represent Travelers' principal damages. [SMF at ¶¶13-15]. According to the Indemnity Agreement, Mr. Dugan's Affidavit is *prima facie* evidence of the amount of Travelers' damages, and the Indemnitors' liability therefore. [SMF at ¶5e]. Likewise,

---

[8] The affidavit of Chris Dugan is part of the evidence supporting Travelers' motion here, and is attached as an **Exhibit "A"** to the SMF. Mr. Dugan is Claims Counsel for Travelers.

this Court has previously determined that a surety's affidavit of its payments is *prima facie* evidence of the surety's damages. *Aventura,* 534 F. Supp. 2d at 1320; *see also Great American Ins. Co. v. General Contractors and Construction Management, Inc.*, 2008 W.L. 2245986, *4 (analyzing the indemnity agreement, and the evidence of the surety's payments, and holding that the surety "has made a prima facie case that it made the payments in good faith").

As reflected in Mr. Dugan's Affidavit, since receiving the performance bond claim on the Project, Travelers has paid $4,246,869.35 to Claimants, Attorneys, Consultants, Vendors and Internal Costs. [SMF at ¶15]. Travelers has not recovered any proceeds from the Indemnitors or the Projects as of the date of this motion to offset its damages. [SMF at ¶11].

The Indemnitors specifically agreed to reimburse Travelers for all "loss, damage, demand, liability, cost, charge, Bond premium, suit, judgment, attorney's fee, and expense which the Company incurs in consequence of having obligations in connection with such Bonds. Expense includes but is not limited to; the cost incurred by reason of making any investigation in connection herewith; the cost of procuring or attempting to procure release from liability including the defense of any action brought in connection herewith and the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors." [SMF at ¶5a]. Travelers requests that the Court enter judgment against the Indemnitors finding them liable for Travelers' reasonable attorneys' fees, consultants' fees, in-house fees, costs, and expenses in addition to the amounts incurred prior to this action, and reserve jurisdiction to determine the amount of such fees and costs upon the presentation of evidence of such fees and costs.

## IV.  CONCLUSION

The pleadings, depositions, affidavits, and other materials on file with the Court establish that there is no genuine issue as to any material fact, and accordingly, Travelers is entitled to

summary judgment as a matter of law. Therefore, Travelers respectfully requests that the Court enter Summary Judgment against the Indemnitors and in favor of Travelers:

(a) adjudicating that the Indemnitors are liable to Travelers, jointly and severally, pursuant to the terms of the Indemnity Agreement;

(b) entering judgment in the principal amount of $4,246,869.35 against the Indemnitors;

(c) adjudicating that Travelers is entitled, pursuant to the Indemnity Agreement, to its reasonably incurred attorneys' fees, consultants' fees, in-house fees, expenses, and costs incurred for investigating, defending against, and resolving the bond claims, and for prosecuting this indemnity action, and reserving jurisdiction to determine the amount of such fees and costs; and

(d) granting Travelers such other relief as the Court deems just and proper.

Respectfully submitted:

/s/ Kevin M. Mekler
E.A. "SETH" MILLS, JR., ESQ.
Florida Bar No. 339652
smills@mpdlegal.com
KEVIN M. MEKLER, ESQ.
Florida Bar No. 0856711
kmekler@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa Street, Suite 2010
Tampa, Florida 33602
(813) 229-3500 - Telephone
(813) 229-3502 - Facsimile
*Attorney for the Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2013 the foregoing document was served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner to those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

                                      */s/ Kevin M. Mekler*
                                             Attorney

## SERVICE LIST

**Maury L. Udell, Esq.**
mudell@bmulaw.com
Beighley, Myrick & Udell, P.A.
66 West Flagler Street, 7th Floor
Miami, Florida 33130
Telephone (305) 349-3930
Fax (305) 349-3931
*Served via CM/ECF*