IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-CV-23645-WMH

CARLES CONSTRUCTION, INC.,
a Florida corporation, REINALDO
CARLES, and MARIA C. CARLES,

    Plaintiffs,

v.

TRAVELERS CASUALTY &
SURETY COMPANY OF AMERICA,
a foreign corporation,

    Defendant.
_____/

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT**

    Defendant, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA ("Travelers"), through its counsel, and pursuant to S.D. Fla. L.R. 7.1, replies to Plaintiff's Response to Travelers Motion For Final Summary Judgment ("Response"). [Dkt. 137].

## INTRODUCTION

    In their Response to Travelers' Motion for Summary Judgment, Plaintiffs once more attempt to survive judgment in Travelers' favor by clouding the issues and misrepresenting the record evidence to this Court. The issues before this Court are quite simple when viewed in conjunction with the following undisputed facts: the Plaintiff Indemnitors signed the Indemnity Agreement [Dkt. 136, ¶¶3-4], Travelers then issued payment and performance bonds at Carles' request [Dkt. 136, ¶6], Carles failed to perform its obligations under the contracts that Travelers bonded [Dkt. 136 ¶7], Travelers incurred losses in the form of payments to claimants, consultants and attorneys. [Dkt. 136, ¶¶9-15], and pursuant to the terms of the Indemnity Agreement, Travelers made a request for collateral and indemnity to the Indemnitors, but never received any funds. [Dkt. 136, ¶¶ 10-11].

1

In summary, when this Court is able to step aside from the Indemnitors/Plaintiffs' inflammatory and conclusory statements, which amount to nothing more than an unsupported recitation of the allegations in the Second Amended Complaint, and view the record evidence in conjunction with Florida law, this Court should find that Travelers is clearly entitled to summary judgment on its claim for contractual indemnity.

## MEMORANDUM OF LAW

### I. Travelers' Statement of Material Facts should be deemed admitted because the Plaintiffs' Statement Lacks Adequate Summary Judgment Evidence

The Local Rules provide that a party responding to a motion for summary judgment cannot simply make legal arguments in an attempt to negate or refute the moving party's statement of material facts; the responding party must file its own statement of material facts, supported by record evidence, that controverts the moving party's statement of material facts or the moving party's statement is deemed admitted.  *See* S.D. Fla. L.R. 56.1(b).  The Plaintiffs failed to controvert Travelers' Statement of Material Facts ("Travelers' Statement"), and as a result, the Court should deem Travelers' Statement as admitted.

#### a. Paragraphs 9 through 12 do not cite to any record evidence and should be stricken or disregarded by the Court.

Paragraphs 9 through 12 of Plaintiffs' Statement do not refute Travelers' record citations with anything more than bare allegations, lacking citations to any record evidence in support, as the Local Rules require. Despite the Plaintiffs' bare allegations to the contrary, Travelers provided numerous record citations for each of the referenced paragraphs in Travelers' Statement.

The Local Rules provide that the opposition to a motion for summary judgment shall be accompanied by a statement of material facts "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." S.D. Fla.

2

L.R. 56.1(a)(2). Because the Plaintiffs failed to controvert paragraphs 9 through 12 of Travelers' Statement in the manner required by the Local Rule, they should be deemed admitted.[1]

### b. Paragraphs 17 and 19 purport to, but do not contradict paragraphs within Travelers' Statement of Material Facts.

Paragraphs 17 and 19 in the Indemnitors' Statement purport to, but do not controvert the corresponding paragraphs within Travelers' Statement. First, paragraph 17 of Travelers statement of facts stated: "Plaintiffs' admitted they were in Default under the terms of the Indemnity Agreement because they failed and refused to indemnify Travelers' and/or post collateral security. [Carles Depo, pp 41 – 42, ln 13 – 15]. Plaintiffs' further admitted that once Plaintiffs' breached the Indemnity Agreement, Travelers had the right to settle with FMG. [Carles Depo, pp 42, ln 12 – 15]." In response, Indemnitors asserted a blanket denial, and then purported to refute Travelers allegations by completely misrepresenting the testimony provided by Mr. Carles. To avoid any confusion, Mr. Carles testified as follows:

> Q: We have already talked about one of the provisions of this agreement, in fact, multiple times in this agreement, it says that indemnification and/or collateral security shall be posted upon demand, right?
>
> A: I already answered yes to that.
>
> Q: And then such by not making payment upon demand, that would be a breach of this agreement?
>
> A: Yes.
> [Carles Depo, pp. 41, ln 13 – 20]
>
> Q: I appreciate it. I have got to do what I have to do, Mr. Carles, and you can answer as you see fit. My question, again, to you was once the breach

---

[1] As a result, the Indemnitors in total admit that: 1) Indemnitors all signed the Indemnity Agreement before Travelers issued the performance bonds on the Quantum on the Bay and Brickell on the River Projects ("Projects"); 2) Travelers received claims for Carles' allegedly defective or incomplete work, delay, or failure to make payment; Carles was formally terminated on August 3, 2007; 3) Travelers paid $4,246,869.35 to resolve the claims which is supported by a sworn statement from Travelers; 4) prior to settling with Facchina-McGaughan, Travelers issued a collateral demand to its Indemnitors that provided that Travelers would forego the settlement and permit Carles to continue litigating with Facchina-McGaughan if the Indemnitors posted collateral; and 5) the Indemnitors neither agreed to indemnity Travelers, nor posted the requested collateral.

3

       occurred, Travelers had the right to settle any such right or claim of the Indemnitors as it saw fit?

A:    Yes.
[Carles Depo., pp 42, ln 12 – 15]

Indemnitors' response to paragraph 17 contains nothing more than self-serving commentary from counsel attempting to spin the clear and unequivocal testimony from Mr. Carles admitting that the Indemnitors breached the Indemnity Agreement by not posting collateral, and thus, Travelers was entitled to settle with Facchina-McGaughan following the breach.

Second, paragraph 19 of Travelers statement listed 6 bases for deciding to settle the competing claims that were revealed during Travelers independent investigation. In response, the Indemnitors include a paragraph of unsupported conclusions, and one sentence that states that Travelers' scheduling expert determined that Carles was in-fact responsible for 31 days of delay. Indemnitors response does not refute paragraph 19 of Travelers statement of fact, but rather bolsters Travelers argument that even its own scheduling expert did not opine that Carles' had no liability for the delay damages. Indemnitors failed to address the remaining portions of paragraph 19, including the damages experts, Facchina-McGaughan's experts, Travelers' analysis of document presented, the lack of evidence from Carles, and analysis of risk to Travelers if claims proceeded to final hearing without collateralization.

Accordingly, because Indemnitors failed to refute paragraphs 17 and 19 of Travelers statement of facts, these paragraphs must be deemed admitted.

       **c.   Paragraphs 18, 20 and 21 purport to, but do not contradict paragraphs within Travelers' Statement of Material Facts.**

Finally, paragraphs 18 through 20 of the Indemnitors' Statement purport to dispute the corresponding paragraph in Travelers' Statement, and makes a series of conclusory and self-serving arguments by way of an affidavit from Reinaldo Carles, Jr. The Affidavit is completely devoid of any evidentiary support, and rather attempts to controvert the direct testimony from Mr. Carles at his

4

own deposition through privileged communications and inadmissible hearsay. The affidavit is the subject of a Motion to Strike and for Sanctions [Dkt. 124] that has been fully briefed, and Travelers expressly incorporates its prior arguments raised in the motion to strike.

As the foregoing indicates, paragraphs 18, 20 and 21 of the Indemnitors' Statement should be disregarded or stricken by the Court, which results in the corresponding paragraphs of Travelers' Statement being deemed admitted

## II. Indemnitors' Argument That "Travelers Breached Its Surety Agreement" Has No Bearing On The Adjudication of Travelers' Indemnity Claim

The main argument raised by the Indemnitors in response to Travelers motion for summary judgment is that Travelers "breached its *surety agreement*." As cited in Travelers motion for summary judgment on Plaintiffs' claims, the term "surety agreement" when used by the Plaintiffs/Indemnitors references the performance bond itself. [Carles Depo., pp 28, ln 16-25]. Travelers has fully briefed this Court on the law prohibiting a principal from asserting a claim against a surety for breach of the performance bond, and incorporates those arguments herein. [Dkt. 112 & 125] Travelers claim for indemnity arises under the terms of the Indemnity Agreement, which is an agreement that is separate and distinct from the performance bond. Notwithstanding the invalidity of Plaintiffs' claims against Travelers under the "surety agreement", any argument related to this separate contract has absolutely no bearing on Travelers claim for indemnity under the terms of the Indemnity Agreement.

Within the context of "breaching its surety agreement," Indemnitors first argued that Travelers' "breached the contracts between the parties by acting in bad faith in settling Carles Construction's claim against Facchina-McGaughan for no renumeration [sic] without the consent of the Plaintiffs." [Dkt. 137, pg 3]. Evan assuming that "contracts between the parties" referred to the Indemnity Agreement, the Indemnitors' argument is without merit because there is nothing in the Indemnity Agreement, or at law, that requires the consent of the Indemnitors to settle, or a finding of

5

bad faith on the part of the surety, once a surety makes a collateral demand and the Indemnitors fail to comply.  *Liberty Mut. Ins. Co. v. Aventura Eng. & Constr. Corp.*, 534 F. Supp. 2d 1290, 1316 (S.D. Fla. 2008) ("[Indemnitor's] failure to post the demanded collateral negates any claim of bad faith.  It is undisputed that Defendants did not post the required collateral in order to arbitrate its claim…this failure to comply with the clear terms of the Indemnity Agreement defeats, *as a matter of law*, Defendants claim of bad faith.").

It is undisputed that Travelers made a collateral demand prior to settling the underlying litigation, and Indemnitors ignored or otherwise refused to comply with the demand.  Thus, pursuant to *Aventura*, the Indemnitors' bad faith defense fails as a matter of law.  The Indemnitors did not attempt to distinguish *Aventura*, and completely ignored the court's holding that a failure to post collateral negates the defense of bad faith as a matter of law.  Instead, the Indemnitors simply repeated their baseless conclusion that Travelers acted in bad fath, without any further support or analysis.

Next, the Indemnitors argued that Travelers "act[ed] in bad faith by settling all claims against Plaintiffs, despite the advice of its own counsel and experts who reviewed the claim finding Carles Construction with virtual no liability when compared to the claim being made."  [Dkt. 137, pp 4]. Once more, the Indemnitors make sweeping and conclusory arguments without a shred of evidence in support.  There is no evidence in the record that Travelers acted contrary to the advice of its counsel and experts, and for good reason…because there is no such evidence.  With regard to the experts, Travelers retained a scheduling expert, Don Carlow, from the firm of Lovett Silverman.  The Indemnitors point to the schedule analysis for the proposition that Travelers' own experts found only 31 days of delay attributable to Carles.  However, what the evidence actually showed was that Travelers was faced with impending arbitration where Facchina-McGaughan claimed damages for 236 days of delay, and Travelers' best day in court resulted in an undisputed finding of at least 31 days of delay.  Under Florida law, this potential liability alone is sufficient for a showing that

Travelers is entitled to indemnification. "A party seeking indemnification must only establish that the settlement was made based on his potential liability to the plaintiff…the settling surety needs to show actual liability only if the indemnitor is not given notice and an opportunity to assume responsibility for the owner's claim." *Aventura*, 534 F. Supp. 2d at 1319.

Here, as demonstrated by the undisputed facts and the Indemnitors own pleadings, the Indemnitors were given notice and an opportunity to take responsibility for the claims when Travelers issued its collateral demand, but they chose to ignore the collateral demand. Furthermore, Travelers was already facing actual liability because there were at least 31 days of undisputed delay attributable to Carles. These undisputed facts alone provide Travelers with the right to contractual indemnity as a matter of law. *See also, Elec. Workers Local Pension Fund v. D Bar D Enterprises, Inc.*, 772 F. Supp. 1167, 1173 (D. Nev. 1991) (Indemnitors failure to post collateral and instruct the surety to litigate barred any objection to the surety's settlement); *Fidelity & Deposit Co. of Maryland v. D.M. Ward Construction Co.*, 2008 WL 2761314, *3 (D. Kan. 2008) (Court held that indemnitors "bargained away the right to contest how [surety] handled claim upon the bonds" by not posting collateral).

Finally, the Indemnitors argued that Travelers "breached its surety agreement and acted in bad faith by settling eliminating Carles' adverse claims notwithstanding the validity of those claims with no good faith basis other than to protect its own interest in maintaining an advantageous business relationship with Paul Facchinna [sic]." [Dkt. 137, pp 5]. This argument presents two separate sub-bases: 1) that Carles' claims were valid; and 2) that Travelers settled those claims to protect a business relationship with Paul Facchina. There is not even a scintilla of evidence in the record to support either bases presented by the Indemnitors.

Taken in reverse order, nobody from Facchina-McGaughan was deposed or submitted an affidavit, and all of the individual Travelers and St. Paul Fire and Marine employees deposed unequivocally stated that they were not aware of the relationship with Facchina (duration, scope, etc),

7

and did not make any decisions regarding the Carles settlement based upon any relationship with Facchina, if such a relationship existed outside the scope of the underlying litigation. With regard to the validity of Carles' claims, neither the Indemnitors nor Plaintiffs have ever submitted any record evidence whatsoever to this Court related to the validity of Carles' affirmative claims in the underlying matter. The only record evidence presented to this court was presented by Travelers' employees who uniformly testified that Carles had no documentation, no expert opinions, and had conducted no discovery in furtherance of his claims in the underlying matter. [Dkt 128, ¶¶18-19], and the only expert reports prepared, were prepared by Facchina-McGaughan in support of its claim, and the Lovett-Silverman report in opposition to Facchina-McGaughan's claim. [Id.]

Accordingly, Travelers is entitled to summary judgment on its claim for indemnity.

### III. There Is No Question Of Fact Remaining And Indemnitors' Bad Faith Defense Fails As A Matter Of Law

Previously, this Court correctly held that, "as a matter of law, there cannot be a finding of bad faith when an indemnitor fails to post the contractually required collateral." *Aventura*, 534 F. Supp. 2d at 1317. Here, it is undisputed that the Indemnitors failed to post the contractually required collateral, despite Travelers request and offer to accept the collateral and permit Carles to continue prosecuting its affirmative claims against Facchina-McGaughan. Notwithstanding this bright-line rule, and a total lack of evidence from the Indemnitors, Travelers continues to fend off baseless allegations that it acted in bad faith when it settled the claims between Facchina-McGaughan and Carles Construction.[2]

The Indemnitors rely heavily upon *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 571 F.3d 1143 (11th Cir. 2009). However, *Auto-Owners* is readily distinguishable from the case at bar, and does not apply to prevent Travelers from obtaining summary judgment on its

---

[2] The Indemnitors do not contest the validity of Travelers damages related to the Shore/Form litigation, or any of the other costs incurred by Travelers in connection with issuing the bonds. The only arguments (albeit unsupported) made by the Indemnitors relate to the settlement involving Facchina-McGaughan. Thus, all remaining indemnity damages are uncontested.

8

indemnity claim. First, *Auto-Owners* was an appeal from the granting of a motion for new trial. Thus, the Eleventh Circuit's review was focused on "the legal standard by which the jury was instructed to evaluate Auto-Owners' duty of good faith in handling and settling of the claim, along with Southeast's theory of Auto-Owners' bad faith." *Id* at 1145.  The Court considered the "evidence the jury heard at trial and then determined whether reasonable inferences that could be drawn from the evidence support the jury's verdict." *Id*.   This is a critical distinction because, as noted below, the Indemnitors in *Auto-Owners* had actual documented and testimonial evidence that was presented to a jury, and the Court was only looking at whether the jury's verdict was reasonable based upon its review of such evidence.  Here, the Indemnitors have no evidence and instead rely only upon a series of hollow and unsupported allegations.  Stated otherwise, here the Indemnitors may have framed their allegations to track with the language of *Auto-Owners*, but unlike the indemnitors in *Auto-Owners,* they lack the evidence to back up their allegations.  Based upon the lack of evidence alone, the Indemnitors in this case cannot survive summary judgment, and should not be permitted to proceed to trial on Travelers indemnity claim.

The following is a comparison of the evidence presented to the jury by the Indemnitors in *Auto-Owners* versus the record evidence before this Court in this action:

| **Auto-Owners** | **Carles Construction** |
|---|---|
| Evidence from Indemnitors included written documentation from Surety's independent monitoring attorney, in-house attorney, and claims manager from three years of investigation, in which these individuals concluded that the principal was not liable to the obligee.  The Surety ignored the assessments.  *Id* at 1153 | Allegation that Surety ignored experts and consultants.  No written documentation or testimony supporting the allegation.  Affidavit from Reinaldo Carles, Jr. is subject to motion to strike because it contains privileged communications, and is otherwise solely inadmissible hearsay.[3] |

---

[3] Indemnitors also claim that "it is undisputed that Travelers maintained a two-million dollar per year surety account with the principal of Facchina-McGaughan" to allege self-dealing by Travelers.  There is no documented or

9

| | |
|---|---|
| Surety issued a collateral demand to the Indemnitors for the penal sum of the bond ($956,987). The Indemnitors "offered to post a bond, offered a letter of credit, offered to deposit monies in trust, and offered to give [Surety] a lien on property." The Surety rejected all of the options offered by the Indemnitors. *Id* at 1151. | Travelers issued a collateral demand and the Indemnitors ignored or otherwise refused to post collateral in any form. |
| The Indemnitors sent a letter, pursuant to the indemnity agreement, requesting that the Surety not settle with the obligee, continue defending the state court action, and offering the full amount of the bond in indemnity. The Surety rejected the offer and increased its collateral demand from $956,987 to $3,000,000. *Id* at 1152. | Travelers collateral demand was less than ½ of the penal sum of the bond. Testimony from Travelers was that even if Carles posted the collateral, Travelers would still have been at risk, but willing to forego the settlement and proceed to final arbitration while partially collateralized. |
| The Surety subsequently settled with the Obligee by paying the full amount of the bond, and executed a release that flowed only to the Surety and did not release the Principal from any of the Obligee's claims. *Id* at 1152. | Travelers settled with Facchina-McGaughan for a full and final release of all claims pending against both Travelers and Carles. |

The Court in *Auto-Owners* held that "bad faith requires an improper motive or dishonest purpose on the party of the surety. Moreover improper motive can be evidenced by unreasonable conduct on the part of the surety. However, unreasonable conduct, including a negligent investigation of a claim, does not by itself constitute bad faith. Rather, to give rise to an inference of bad faith, such conduct must be accompanied by other evidence of improper motive, such as a self-interested settlement." *Id* at 1146 (Internal citations omitted). Referring to the evidence produced at trial by the Indemnitors in *Auto-Owners*, the Eleventh Circuit applied this standard and simply held that "based on the evidence presented to the jury, the district court's grant of a new trial was an abuse of discretion." This holding is far afield from the broad overarching position taken by the Indemnitors implying that *Auto-Owners* requires a trial on all

---

testimonial record evidence supporting this allegation whatsoever, and by simply arguing it in response to Travelers motion for summary judgment it does not become the truth.

indemnity cases involving a settlement of competing claims by a surety. The *Auto-Owners* decision simply holds that the indemnitor in that case presented sufficient evidence to support the jury's verdict. Because the Indemnitors here have not produced *any* evidence sufficient enough to survive summary judgment, *Auto-Owners* is inapplicable.

## CONCLUSION

For the foregoing reasons, Travelers respectfully requests this court enter summary judgment in favor of Travelers on its claim for indemnity, along with any such further relief this court deems just and proper.

Respectfully submitted,

 */s/ Kevin M. Mekler*
E.A. "SETH" MILLS, JR., ESQ.
Florida Bar No. 339652
smills@mpdlegal.com
KEVIN M. MEKLER, ESQ.
Florida Bar No. 0856711
kmekler@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa Street, Suite 2010
Tampa, Florida 33602
(813) 229-3500 - Telephone
(813) 229-3502 - Facsimile
*Attorney for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2013 the foregoing document was served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner to those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

 */s/ Kevin M. Mekler*
Attorney

## SERVICE LIST

**Maury L. Udell, Esq.**
maury.udell@miami.bampa.net
Beighley, Myrick & Udell, P.A.
66 West Flagler Street, 7th Floor
Miami, Florida 33130
Telephone (305) 349-3930
Fax (305) 349-3931
*Served via CM/ECF*